UNITED STATES DISTRICT COURT
DISTRICT OF NEBRASKA

| | |
|---|---|
| ZACH HILLESHEIM, <br><br> *Plaintiff*, <br><br> v. <br><br> NEBRASKA FURNITURE MART, INC., <br><br> *Defendant* | Case No. _____ <br><br><br> **COMPLAINT** <br><br> **Injunctive Relief Sought** |

Plaintiff Zach Hillesheim, by and through the undersigned counsel, brings this action against Nebraska Furniture Mart, Inc., a Nebraska business corporation, for violations of the Americans With Disabilities Act, 42 U.S.C. § 12181, *et seq.* (the "ADA") and its implementing regulations, and alleges as follows:

### INTRODUCTION

1.  Plaintiff brings this civil rights action against Defendant for failing to design, construct, and/or own or operate facilities that are fully accessible to, and independently usable by, persons with disabilities.

2.  Defendant owns the retail complex known as "Nebraska Furniture Mart" which to the extent it was constructed and first occupied after January 26, 1993 or was altered after January 26, 1993 was required to be designed and constructed to be readily accessible to persons with disabilities. To the extent "Nebraska Furniture Mart" was not constructed or altered before January 26, 1993, it was required to remove barriers to access to the extent barrier removal was readily achievable. "Nebraska Furniture Mart" contains architectural barriers to accessibility.

3. The violations alleged in this complaint occurred at "Nebraska Furniture Mart". The "Nebraska Furniture Mart" Campus is associated with several addresses including 700 S 72nd St; 7312 Jones St.; 7309 Jones St.; and 402 Rose Blumkin Dr.; all located in Omaha, Nebraska.

4. Defendant's failure to provide equal access to "Nebraska Furniture Mart" violates the mandates of the ADA to provide full and equal enjoyment of a public accommodation's goods, services, facilities, privileges, and advantages.

5. Defendant's conduct constitutes an ongoing and continuous violation of the law.

6. Accordingly, Plaintiff seeks a declaration that Defendant's facilities violate federal law and an injunction requiring Defendant to make modifications to the facilities so that they are fully accessible to, and independently usable by, individuals with disabilities. Plaintiff further requests that the Court retain jurisdiction over this matter for a period to be determined to ensure that Defendant continues to comply with the relevant requirements of the ADA.

## JURISDICTION AND VENUE

7. Jurisdiction of this Court arises under 28 U.S.C. §§ 1331 and 1343(a)(3). This action includes federal law claims brought pursuant to Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181–12189. The Court has the jurisdiction to issue a declaratory judgment pursuant to 28 U.S.C. § 2201 and Fed R. Civ. P. 57.

8. Venue in this judicial district is proper because Defendant is located and transacts business within this judicial district and has sufficient contacts to be subject to personal jurisdiction in this judicial district, and because this is the judicial district in which the acts and omissions giving rise to the claims occurred.

## PARTIES

9. Plaintiff Zach Hillesheim is a resident of the city of Omaha, Nebraska.

10. Plaintiff suffers from, and all times relevant hereto has suffered from, a legal disability as defined by the ADA, 42 U.S.C. § 12102(2). Plaintiff is therefore a member of a protected class under the ADA, under the regulations implementing the ADA set forth at 28 C.F.R. § 36.101 *et seq*.

11. Plaintiff Hillesheim was paralyzed as an infant while undergoing surgery to address a congenital heart defect. During the surgery, his spine was severed, paralyzing him below the waist. Mr. Hillesheim cannot walk and uses a wheelchair for mobility. As a person with a disability, Mr. Hillesheim has a personal interest in having full and equal access to places of public accommodation and to the goods, services, facilities, privileges, advantages or other things offered therein.

12. Defendant Nebraska Furniture Mart, Inc., a Nebraska business corporation, is the owner and lessor of the real property and improvements which are the subject of this action, the retail complex known as "Nebraska Furniture Mart", a place of public accommodation within the meaning of the ADA, located at the street addresses of 700 S 72nd St, Omaha, NE 68114; 7312 Jones St., Omaha, NE 68114; 7309 Jones St., Omaha, NE 68114; and 402 Rose Blumkin Dr., Omaha, NE 68114.

## FACTUAL BACKGROUND

13. On January 28, 2019 Plaintiff Hillesheim visited the retail complex "Nebraska Furniture Mart" in Omaha, Nebraska. The complex is made up of separate buildings housing different departments. "Nebraska Furniture Mart" holds itself out as a retail campus, and provides an "Omaha Campus Map" which includes buildings on multiple properties IDs shows as a single retail complex or campus.

14. When Plaintiff drove to "Nebraska Furniture Mart" the customer parking lot(s) contained over 1001 total parking spaces and 36 parking spaces reserved through paint or signage as accessible parking spaces. Plaintiff drove through each portion of the parking lot(s) except the customer parking across Rose Blumkin Drive from the main warehouse and showrooms. The customer parking lot across Rose Blumkin Drive from the main warehouse and show rooms had approximately 359 parking spaces. The parking area near Mrs. B's had approximately 115 parking spaces. The west parking area had approximately 351 parking spaces. The south west parking area had approximately 189 parking spaces. The south parking area had approximately 283 parking spaces, and the east parking area had approximately 87 parking spaces. If all of the parking areas are considered separate parking facilities (but not including the customer parking across Rose Blumkin Drive) then Defendant is required to have 30 accessible parking spaces. If the customer parking lot across Rose Blumkin Drive is also included in the campus, then the "Nebraska Furniture Mart" Campus needs a total of 38 accessible parking spaces.

15. There was a group of 8 parking spaces reserved as accessible parking spaces near the electronics department on the west side of "Nebraska Furniture Mart". The access aisles serving these parking spaces were too narrow for Plaintiff to use effectively. The curb ramp providing access to the sidewalk near the reserved parking spaces was excessively steep.

16. There was a group of 6 parking spaces reserved through posted signage as accessible parking spaces near the electronics department on the west side of "Nebraska Furniture Mart". Plaintiff could not use these parking spaces, as all of these reserved parking spaces lacked adjacent access aisles. These parking spaces were also reserved through signage posted lower than 5 feet above the surface of the parking lot.

17. There was a group of 5 parking spaces reserved as accessible parking spaces on the south end of the west building at "Nebraska furniture Mart". The curb ramp providing wheelchair access to the surrounding sidewalk emptied directly into a reserved parking space rather than an accessible route.

18. Near the skyway between the two buildings, there were 3 parking spaces reserved as accessible parking spaces. 2 of the 3 reserved parking spaces lacked an adjacent access aisle.

19. Near the east building there were 4 parking spaces reserved as accessible parking spaces through paint on the surface of the parking lot. These parking spaces and their adjacent access aisles were sloped and were not reserved through posted signage.

20. There were 6 parking spaces reserved as accessible parking spaces on the east side of the west building. A ramp projected into the access aisle serving 2 of these reserved parking spaces, creating steep slopes.

21. There were 4 parking spaces reserved as accessible parking spaces by Mrs. B's Clearance Center and Factory Outlet that were reserved with signs posted lower than 60 inches above the surface of the parking lot.

22. Images in Exhibit A to this Complaint depict the parking lot(s) at "Nebraska Furniture Mart" as it appeared on Plaintiff's January 28, 2019 visit.

23. In light of the architectural barriers at "Nebraska Furniture Mart", and the fact Plaintiff perceives he cannot access the premises on an equal and independent basis, while Plaintiff wants to return to patronize "Nebraska Furniture Mart", he will continue to be injured in the future if he visits, until Defendant alters the premises to remove the architectural barriers. Plaintiff would like to be able to patronize "Nebraska Furniture Mart", but he cannot, and these architectural barriers stop him from doing so. He plans to

return and patronize "Nebraska Furniture Mart" when he learns that the premises have been made fully accessible to persons who use wheelchairs for mobility.

24. Plaintiff has personal knowledge of barriers which result in him not being able to access Defendant's premises independently on a full and equal basis because of his disabilities, due to the physical barriers to access and violations of the ADA that exist at Defendant's premises. As a result of Defendant's non-compliance with the ADA, Plaintiff cannot independently access the facilities and/or is excluded from full and equal enjoyment of the goods, services, privileges, advantages, and/or accommodations offered therein.

25. Plaintiff Hillesheim's desire to visit "Nebraska Furniture Mart" in the future is lessened because of his knowledge that barriers exist at the premises which affect him on the basis of his disability. Plaintiff Hillesheim intends to return to "Nebraska Furniture Mart". He plans to return and patronize "Nebraska Furniture Mart" when he learns that the premises have been made fully accessible to persons who use wheelchairs for mobility.

26. Plaintiff Hillesheim is a resident of Omaha, Nebraska, and he plans to continue visiting businesses in the greater Omaha area in the future and would enjoy being able to patronize Defendant's retail complex.

27. Plaintiff Hillesheim attempted to access Defendant's premises but could not do so independently on a full and equal basis because of his disabilities, due to the physical barriers to access and violations of the ADA that exist at Defendant's premises. As a result of Defendant's non-compliance with the ADA, Plaintiff Hillesheim cannot independently access the facilities and/or is excluded from full and equal enjoyment of the goods, services, privileges, advantages, and/or accommodations offered therein.

## THE ADA AND ITS IMPLEMENTING REGULATIONS

28. On July 26, 1990, President George H.W. Bush signed into law the ADA, 42 U.S.C. § 12101, *et seq.*, a comprehensive civil rights law prohibiting discrimination on the basis of disability. In its findings, Congress determined that, among other things:

   a. Some 43 million Americans have one or more physical or mental disabilities, and this number is increasing as the population as a whole grows older;

   b. Historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, discrimination against individuals with disabilities continues to be a serious and pervasive social problem;

   c. Discrimination against individuals with disabilities persists in such critical areas as employment, public housing accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services;

   d. Individuals with disabilities continually encounter various forms of discrimination; and

   e. The continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our society is justly famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and nonproductivity.

42 U.S.C. § 12101(a)(1)–(3), (5), (9).

29. Congress explicitly stated that the purpose of the ADA was to:

    a. Provide a clear and comprehensive mandate for the elimination of discrimination against individuals with disabilities;

    b. Provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; and

    c. Invoke the sweep of congressional authority, including the power to enforce the Fourteenth Amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by individuals with disabilities.

42 U.S.C. § 12101(b)(1), (2), (4).

30. Title III of the ADA prohibits discrimination in the activities and facilities of places of public accommodation, and requires places of public accommodation to comply with ADA standards and to be readily accessible to, and independently usable by, individuals with disabilities. 42 U.S.C. § 12181–89.

31. The ADA provided places of public accommodation one and one half years from its enactment to implement its requirements. The effective date of Title III of the ADA was January 26, 1992 (or January 26, 1993 if a business had 10 or fewer employees and gross receipts of $500,000 or less). 42 U.S.C. § 2181; 28 C.F.R. § 36.508(a).

32. Pursuant to the mandates of 42 U.S.C. § 12134(a), the Department of Justice ("DOJ") promulgated federal regulations to implement the requirements of Title III of the ADA, which are codified at 28 C.F.R. Part 36. Appendix A of the 1991 Title III regulations (republished as Appendix D to 28 C.F.R. Part 36) contains the ADA Standards for Accessible Design, which were based upon the ADA Accessibility Guidelines ("1991 ADAAG") published by the Access Board on the same date. Public accommodations were required to conform to these regulations by January 26, 1992 (or January 26,

1993 if a business had 10 or fewer employees and gross receipts of $500,000 or less). 42 U.S.C. § 12181, *et seq.*; 28 C.F.R. § 36.508(a).

33. In 1994, the Access Board began the process of updating the 1991 ADAAG by establishing a committee composed of members of the design and construction industries, the building code community, and State and local government entities, as well as individuals with disabilities.

34. In 1999, based largely upon the report and recommendations of the advisory committee, the Access Board issued a notice of proposed rulemaking to update and revise the 1991 ADAAG.

35. The Access Board issued final publication of revisions to the 1991 ADAAG on July 3, 2004.

36. On September 30, 2004, the DOJ issued an advance notice of proposed rulemaking to begin the process of adopting the 2004 ADAAG revisions.

37. On June 17, 2008, the DOJ published a notice of proposed rulemaking covering Title III of the ADA.

38. The extended process of revising the 1991 ADAAG culminated with the DOJ's issuance of the 2010 Standards for Accessible Design ("2010 Standards"). The 2010 Standards incorporated the revised 2004 ADA Accessibility Guidelines ("ADAAG"), as well as the requirements contained in subpart D of 28 C.F.R. Part 36. The DOJ published the Final Rule detailing the 2010 Standards on September 15, 2010. The 2010 Standards became effective on March 15, 2011.

## FACTUAL ALLEGATIONS

39. Defendant has discriminated against Plaintiff on the basis of his disabilities by failing to comply with the requirements of the ADA and the ADAAG with regard to "Nebraska Furniture Mart". A specific, though not exclusive, list of unlawful physical

barriers and ADA violations present at "Nebraska Furniture Mart" which limit the ability of persons in wheelchairs to access the facilities and/or to enjoy the goods, services, privileges, advantages and/or accommodations offered therein on a full and equal basis, includes the following:

    a. The "Nebraska Furniture Mart" customer parking lot(s) had over 1001 total parking spaces but had fewer than the required at least 21 accessible parking spaces complying with ADAAG 502, in violation of ADAAG 208.2. Plaintiff requires accessible parking spaces which comply with all elements of 502 (including location, width, length, signage, slope, and presence of an access aisle) to ensure he can park safely, make a safe transfer between his vehicle and wheelchair, and travel safely between the parking lot to the building entrance. The lack of appropriate accessible parking caused Plaintiff to leave without patronizing "Nebraska Furniture Mart".

    b. In the group of 8 parking spaces reserved as accessible parking spaces near the west building, the access aisles were narrower than 60 inches, in violation of ADAAG 502.3. Plaintiff demands a compliant access aisle. In order to be a compliant access aisle, the access aisle must comply 502.3 governing access aisles, and with the sloping requirements of 502.4. Plaintiff uses a wheelchair for mobility and needs a safe place to transfer between his vehicle and the parking lot.

    c. The nominal accessible route connecting the group of 8 parking spaces reserved as accessible parking spaces near the west building required traveling on a curb ramp steeper than 1:12, in violation of ADAAG 405.2. Steep curb ramps are more difficult for Plaintiff to use than compliant curb ramps and create the risk of uncontrolled descents and falls.

d. The group of 6 parking spaces reserved as accessible parking spaces near the west building were reserved with signs posted lower than 60 inches above the surface of the parking lot, in violation of ADAAG 216.5 and 502.6. Low or missing signage makes it difficult for Plaintiff to find accessible parking, creates the risk of someone inadvertently parking in accessible parking spaces or access aisles, and hampers the ability of law enforcement to enforce parking laws and regulations.

e. These 6 parking spaces reserved as accessible parking spaces near the west building lacked adjacent access aisles, in violation of ADAAG 502.2. Plaintiff demands a compliant access aisle. In order to be a compliant access aisle, the access aisle must comply 502.3 governing access aisles, and with the sloping requirements of 502.4. Plaintiff uses a wheelchair for mobility and needs a safe place to transfer between his vehicle and the parking lot.

f. The ramp connecting the group of 5 parking spaces reserved as accessible parking spaces near the west building and the nearby raised sidewalk was connected directly to a parking space rather than the accessible route, in violation of ADAAG 502.7. Plaintiff uses a wheelchair for mobility and cannot get around a vehicle parked directly at the base of a curb ramp.

g. 2 of the 3 parking spaces reserved as accessible parking spaces near the skyway between the east and west buildings lacked adjacent access aisles, in violation of ADAAG 502.2. Plaintiff demands a compliant access aisle. In order to be a compliant access aisle, the access aisle must comply 502.3 governing access aisles, and with the sloping requirements of 502.4. Plain-

tiff uses a wheelchair for mobility and needs a safe place to transfer between his vehicle and the parking lot.

h. The group of 4 parking spaces reserved as accessible parking spaces near the east building were not reserved through posted signage, in violation of ADAAG 216.5 and 502.4. Missing signage makes it difficult for Plaintiff to find accessible parking, creates the risk of someone inadvertently parking in accessible parking spaces or access aisles, and hampers the ability of law enforcement to enforce parking laws and regulations.

i. The group of 4 parking spaces reserved as accessible parking spaces near the east building had slopes in both the parking spaces and their adjacent access aisles exceeding 1:48, in violation of ADAAG 502.4. Slopes in parking spaces and access aisles make it more difficult for Plaintiff to make safe transfers.

j. The 2 parking spaces in the group of 6 parking spaces reserved as accessible parking spaces on the east side of the west building had a ramp projecting in the shared access aisle, creating slopes steeper than 1:48 within the access aisle, in violation of ADAAG 502.4. Slopes in parking spaces and access aisles make it more difficult for Plaintiff to make safe transfers.

k. The 4 parking spaces reserved as accessible parking spaces near Mrs B's Clearance & Factory Outlet Center were reserved with signs posted lower than 60 inches above the surface of the parking lot, in violation of ADAAG 216.5 and 502.6. Low or missing signage makes it difficult for Plaintiff to find accessible parking, creates the risk of someone inadvertently parking in accessible parking spaces or access aisles, and hampers the ability of law enforcement to enforce parking laws and regulations.

40. The above listing is not to be considered all-inclusive of the barriers and violations of the ADA encountered by Plaintiff or which exist at "Nebraska Furniture Mart". To qualify as an accessible parking facility, and for a parking space to qualify an accessible parking space, the space must be located on an accessible route, the route must be the shortest accessible route, the space must be marked by appropriate signage, the space must be flanked by an access aisle, and the space and access aisle must comply with sloping requirements. ADAAG 206; 208; 216, Chapter 4 including but not limited to 402, 403, 404, 405, and 406; and 502 – including, but not limited to, 502.4 which governs the floor or ground surfaces of both parking spaces and access aisles.

41. In order to fully remedy the discriminatory conditions, Plaintiff requires an inspection of "Nebraska Furniture Mart" in order to photograph and measure all such barriers to access and violations of the ADA and the ADAAG.

42. Compliance with the ADA standards, and the ADAAG is required by 42 U.S.C §§ 12182 and 12183 to the extent the facility was designed and constructed or altered after January 26, 1993, and the violations to the ADAAG requirements are not a result of compliance being structurally impracticable. 28 C.F.R § 36.401(a)(1).

43. In the alternative, to the extent any architectural elements were constructed prior to that date, compliance with the ADA standards and the ADAAG is required by 42 U.S.C § 12182(b)(2)(A)(iv) because removal of architectural barriers is readily achievable. Compliance with the ADA standards and the ADAAG is readily achievable by Defendant due to the lack of difficulty and low cost of remedying the above-listed barriers. Some of the above-listed violations can be remedied through the same measures prescribed by federal regulation as examples of modifications that are "readily achievable", including, but not limited to, creating accessible parking spaces. 28 C.F.R. § 36.304(b).

44. Compliance is also readily achievable due to the significant assistance available to businesses. Section 44 of the IRS Code allows a Disabled Access tax credit for small businesses with 30 or fewer full-time employees or with total revenues of $1 million or less, which is intended to offset the cost of undertaking barrier removal and alterations to improve accessibility. Section 190 of the IRS Code provides a tax deduction for businesses of all sizes for costs incurred in removing architectural barriers, up to $15,000. *See* ADA Update: A Primer for Small Business, http://www.ada.gov/regs2010/smallbusiness/smallbusprimer2010.htm#tax (Mar. 16, 2011).

45. As a person with a disability, Plaintiff Hillesheim has a personal interest in having full and equal access to places of public accommodation and to the goods, services, facilities, privileges, advantages or other things offered therein.

46. Without injunctive relief, Defendant's failure to remove accessibility barriers will continue to cause injury to Plaintiff, who will continue to be unable to independently access "Nebraska Furniture Mart" and/or to enjoy the goods, services, privileges, advantages and/or accommodations offered therein on a full and equal basis, in violation of his rights under the ADA.

## FIRST CAUSE OF ACTION
**Violations of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.***

47. Plaintiff incorporates and realleges the above paragraphs.

48. Section 302(a) of Title III of the ADA, 42 U.S.C. §§ 12101 *et seq.*, provides:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns,

leases (or leases to), or operates a place of public accommodation.

49. Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations that is equal to the opportunities afforded to other individuals.

50. Defendant has discriminated against Plaintiff and others in that it failed to make its place of public accommodation fully accessible to persons with disabilities on a full and equal basis in violation of 42 U.S.C. § 12182(a) and the regulations promulgated thereunder, including the ADAAG, as described above. Plaintiff Hillesheim has been denied full and equal access to "Nebraska Furniture Mart" and/or has been denied the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations on a full and equal basis.

51. Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct. Defendant's violations of the ADA and ADAAG are ongoing.

52. Defendant has failed to remove architectural barriers to full and equal access by Plaintiff Hillesheim, even though removing the barriers was required and is readily achievable.

53. Defendant has discriminated against Plaintiff by failing to maintain the accessibility of his premises and by failing to institute policies and procedures to ensure the maintenance of accessible features at his premises.

54. Plaintiff Hillesheim plans to visit "Nebraska Furniture Mart" again in the near future. Plaintiff is without adequate remedy at law, has suffered and is suffering irreparable harm, and reasonably anticipates that he will continue to suffer irreparable harm upon his planned return visit to "Nebraska Furniture Mart" unless and until Defendant is required to remove the physical barriers to access and ADA violations that ex-

ist at Defendant's place of public accommodation, including those set forth specifically herein.

55. This Court has authority under 42 U.S.C. § 12188 to grant Plaintiff injunctive relief, including an order requiring Defendant to make "Nebraska Furniture Mart" readily accessible to and independently usable by individuals with disabilities to the extent required by the ADA and ADAAG, and/or to close "Nebraska Furniture Mart" until such time as Defendant cures the access barriers.

56. Plaintiff has retained the undersigned counsel for the filing and prosecution of this action, and is entitled to recover reasonable attorneys' fees, litigation expenses and costs from Defendant, pursuant to 42 U.S.C. §§ 12205, 12117, and 28 C.F.R. § 36.505.

**WHEREFORE**, Plaintiff respectfully requests:

   a. Plaintiff demands a trial in Omaha, Nebraska.
   b. That the Court issue a Declaratory Judgment that determines that Defendant's facilities, at the commencement of the instant suit, are in violation of Title III of the ADA, 42 U.S.C. § 12181, *et seq.*, and the relevant implementing regulations including the ADAAG.
   c. That the Court award nominal damages.
   d. That the Court issue a permanent injunction, pursuant to 42 U.S.C. § 12188(a)(2) and 28 C.F.R. § 36.504(a), enjoining Defendant from continuing its discriminatory practices; including an order directing Defendant to remove all barriers to the maximum extent feasible or in the alternative make all readily achievable alterations to its facilities so as to remove physical barriers to access and make its facilities fully accessible to and independently usable by individuals with disabilities to the extent required by

  the ADA; and also including an order requiring Defendant to make all reasonable modifications in policies, practices or procedures necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities on a full and equal basis.

e. That the Court award Plaintiff his reasonable attorneys' fees, litigation expenses, and costs of suit pursuant to 42 U.S.C. § 12205 and 28 C.F.R. § 36.505, or as otherwise provided by law; and

f. That the Court issue such other relief as it deems just and proper, and/or is allowable under Title III of the ADA.

DATED:  May 21, 2019

           /s/ Padraigin L. Browne
           Padraigin L. Browne (MN Bar # 389962)
           Browne Law LLC
           8530 Eagle Point Blvd, suite 100
           Lake Elmo, MN 55042
           E-mail: paddy@brownelawllc.com
           Phone: (612) 293-4805